**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

**KING BRANDON MOORE BEY,**

    **Plaintiff,**

**v.**

**AMERICAN EXPRESS
NATIONAL BANK,**

    **Defendant.**

**Case No.: 5:24-cv-927-HDM**

<u>**MEMORANDUM OPINION**</u>

Plaintiff King Brandon Moore Bey ("Bey") has sued Defendant American Express National Bank ("American Express"), alleging common law breach of contract and violation of the Consumer Financial Protection Act. (Doc. 18). This case is before the court on the parties' cross-motions for summary judgment. (Docs. 25, 28). After careful review of the record and applicable law, the court finds that Count One of Bey's Third Amended Complaint, (doc. 18), is due to be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction and Count Two is due to be **DISMISSED WITH PREJUDICE** for failure to state a claim on which relief can be granted, with the parties' cross-motions for summary judgment **DENIED AS MOOT.**

## FACTUAL BACKGROUND

On or about May 11, 2022, Bey, proceeding *pro se* in this matter, opened an account with American Express and received a credit card.[1] (Doc. 29-1, ¶¶ 3–4). All American Express accounts, including Bey's, are governed by a written Cardmember Agreement (the "Agreement") setting out the applicable terms and conditions of the cardholder's account. *Id.*, ¶ 5. Bey made frequent use of his American Express-issued credit card, *id.*, ¶ 7, and the statement period ending on November 9, 2022, showed an outstanding balance of $7,760.25, with at least $2,040.00 due on or before December 4, 2022, (Docs. 25-1 at 41; 29-1, ¶ 10; 29-6 at 5). Bey failed to timely make the required payment, and, on December 9, 2022, American Express canceled his account. (Docs. 29-1, ¶¶ 4, 9; 29-8 at 2; 33 at 3).

On December 12, 2022, three days after American Express canceled his account, Bey made a payment of $7,700, which left an outstanding balance of $60.25. (Docs. 29-1, ¶¶ 9–10; 29-7 at 4). In May of 2023, Bey paid the entire remaining balance of $60.25, leaving his account with an outstanding balance of zero dollars. (Docs. 29-1, ¶¶ 11–12; 29-7 at 11). After Bey fully paid off the outstanding balance on his still-canceled account, no further additional charges or

---

[1] Bey has not submitted any evidence relating to the creation and closing of his American Express account, whether in support of his own Motion for Summary Judgment, (*see* docs. 25; 25-1), or in opposition to American Express's Motion, (*see* doc. 33). The court therefore accepts American Express's presentation of the facts as true.

interest accrued and American Express formally closed the account following the May 2023 payment. (Doc. 29-1, ¶¶ 13–14).

On March 18, 2024, with his original account still closed, Bey applied for another account and credit card, but American Express denied his application because of his credit score. (Docs. 25-1 at 34, 46; 29-1, ¶ 17; 29-9; 29-10 at 2). On April 16, 2025, and despite this rejection and the fact that his original account had been fully paid off, closed, and canceled, Bey sent American Express a parcel via the United States Postal Service that included three documents: a power of attorney form, correspondence addressed to American Express's Chief Financial Officer Christopher LeCeille, and, most importantly for this case, a copy of his November 2022 billing statement with the following words handwritten on it: "Accepted for Deposit, Seven Thousand Seven Hundred Sixty Six Dollars 25/100, Pay to the Order of Bearer" and "For: Brandon Moore/Principal; By: Moore Bey, King B/ Agent (without recourse)." (Docs. 18-1 at 51–52; 25-1 at 41–42; 29-1, ¶ 18). In the letter addressed to Mr. LeCeille, Bey instructed American Express to "apply the principal's balance to the principal's account" and categorized the annotated billing statement as a "tender of payment." (Docs. 25-1 at 30; 29-1, ¶ 18). The only reasonable reading of the contents of Bey's parcel is that he believed that his handwritten notations on the billing statement converted it into a check that could discharge the nonexistent balance on his closed and canceled account. On April 23,

2024, American Express sent Bey a letter affirming its decision to deny his March 2024 application for a new account and informing him that "the tender of payment included in [his] correspondence cannot be used as an acceptable form of payment . . ." (Docs. 25-1 at 34; 29-1, ¶ 19; 29-10). Despite this letter, on May 21, 2024, Bey resent American Express the same documents he had previously sent on April 16th. (Doc. 29-1, ¶ 20).

On June 18, 2024, Bey filed a complaint with the Consumer Financial Protection Bureau, (doc. 29-1, ¶ 21), alleging, among other things, that American Express "refus[ed] to accept valid forms of payment and adhere[] to contractual terms" and baselessly refused to reinstate his account, (doc. 29-11 at 3–5). In response, American Express sent Bey a letter on July 3, 2024, stating it was "unable to reinstate [the] closed account or to approve [his] application . . . or to accept unapproved payment methods." (Docs. 25-1 at 46–47; 29-1, ¶ 22; 29-12).

After receiving this letter from American Express, Bey commenced this action, (doc. 1), and has amended his complaint three times, (docs. 5; 17; 18). In the operative Third Amended Complaint, Bey asserts two causes of action against American Express based on the above: common law breach of contract in Count One, (doc. 18, ¶¶ 11–17), and violation of the Consumer Financial Protection Act in Count Two, *id.*, ¶¶ 18–23, for which he seeks compensatory damages, as well as injunctive and declaratory relief. (Doc. 18 at 4–6). Bey alleges that American

4

Express's actions caused him to incur "penalties, late fees, and interest inflating the balance [of his account] from $7,000 to over $210,000." *Id.*, ¶ 10. Upon Bey's Motion, (doc. 2), the court has allowed him to prosecute this case *in forma pauperis*, (doc. 6), and, as a *pro se* plaintiff, the court will afford Bey more leeway, *Dean v. Barber*, 951 F.2d 1210, 1213 (11th Cir. 1992) (citations omitted).

## ANALYSIS

The court finds that Count One of Bey's Third Amended Complaint is due to be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction and Count Two is due to be **DISMISSED WITH PREJUDICE** for failure to state a claim on which relief can be granted. As explained below, the court finds it necessary to begin with Count Two and then examine how its dismissal affects the court's subject matter jurisdiction over Count One.

I.     Count Two: No Private Right of Action Under the Consumer Financial Protection Act

In Count Two of the Third Amended Complaint, Bey alleges that American Express violated the Consumer Financial Protection Act, 12 U.S.C. §§ 5301–5641 (the "Act") by refusing to accept his "payments" in April and May of 2024. (Doc. 18, ¶¶ 18–23). The fatal flaw underlying Count Two is that, despite Bey's allegations, he can never recover under the Act because it does not provide a private right of action for individuals.

A plaintiff may only assert a claim under a federal statute if Congress has expressly or impliedly permitted such a private right of action. *See, e.g.*, *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). This court has summarized the necessity of a private right of action thus:

> A private right of action is "an individual's right to sue in a personal capacity to enforce a legal claim." *Right of Action*, BLACK'S LAW DICTIONARY (10th ed. 2014). **Not every federal statute provides a private right of action.** *See Cannon v. Univ. of* [*Chi.*], 441 U.S. 677, 688 (1979) ("[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person."). **For an individual to bring a claim alleging a violation of a statute, the statute must explicitly or implicitly provide for a private right of action.** *See Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1361 n.14 (11th Cir. 2008) (noting that when statute does not expressly provide for private right of action, court considers four factors identified in *Cort v. Ash*, 422 U.S. 66, 78 (1975), to determine whether Congress intended to imply such right).

*Bush v. Frazier*, No. 2:18-cv-732, 2019 WL 3305145, at *8 (N.D. Ala. July 23, 2019) (emphasis added). Accordingly, this court will dismiss with prejudice any claim in which a private plaintiff attempts to recover under a statute that does not offer a private right of action, including the Act. *See, e.g.*, *Tillman v. Air Autovest, LLC*, No. 2:16-cv-211, 2016 WL 4379455, at *7 (N.D. Ala. Aug. 17, 2016).

In the Consumer Financial Protection Act, Congress established the Bureau of Consumer Financial Protection (the "Bureau") to "regulate the offering and provision of consumer financial products or services under the Federal consumer financial laws." 12 U.S.C. § 5491(a). To aid in this mission, the Act also establishes

that "[i]f any person violates a Federal consumer financial law, **the Bureau may** . . . commence a civil action against such person to impose a civil penalty or to seek all appropriate legal and equitable relief." *Id.* § 5564(a) (emphasis added). Deferring to this plain language, courts universally hold that the Act "**did not create a private right of action** [because] only the Bureau can bring suits to address violations of consumer financial law." *Schooley v. Option One Mortg. Corp.*, No. 23-12341, 2024 WL 3440178, at *1 (11th Cir. July 17, 2024) (per curiam) (emphasis added). *See also Saber v. Navy Fed. Credit Union*, No. 23-3350, 2023 WL 5651988, at *3 (E.D. Pa. Aug. 31, 2023) ("Numerous courts have held that there is no private cause of action under the [Act] and that the Act is enforceable only by the Bureau of Consumer Financial Protection."); *Gingras v. Rosette*, No. 5:15-cv-101, 2016 WL 2932163, at *22 (D. Vt. May 18, 2016). Because "the structure and specific provisions of the [Act] make[] it clear that Congress did not intend to create a private cause of action," *Gingras*, 2016 WL 2932163, at *22, Bey may not rely on it to assert his claim against American Express in Count Two, *Alexander*, 532 U.S. at 286; *Tillman*, 2016 WL 4379455, at *7.

Bey is proceeding *in forma pauperis* in this matter, (doc. 6), which imposes a duty on this court to dismiss "the case **at any time** if the court determines that . . . the action . . . fails to state a claim on which relief may be granted," 28 U.S.C. § 1915(e)(2)(B)(ii) (emphasis added). *See also Martinez v. Ashtin Leasing, Inc.*, 417

7

F. App'x 883, 884 (11th Cir. 2011) (per curiam) (quoting 28 U.S.C. § 1915(e)(2)(B)(ii)) ("A district court shall dismiss a case proceeding *in forma pauperis* at any time if the court determines that the action 'fails to state a claim on which relief may be granted.'"). The Eleventh Circuit has explicitly held that, if a plaintiff proceeding *in forma pauperis* attempts to state a claim under a federal statute that does not provide a private right of action, *sua sponte* dismissal for failure to state a claim on which relief can be granted under 28 U.S.C. § 1915(e)(2)(B)(ii) is appropriate. *See, e.g.*, *Smith v. JP Morgan Chase, Bank of Am., N.A.*, 837 F. App'x 769, 769–70 (11th Cir. 2021); *Berkery v. Kaplan*, 518 F. App'x 813, 814–15 (11th Cir. 2013) (per curiam). *See also Schooley*, 2024 WL 3440178, at *1 (affirming dismissal of plaintiff's Consumer Financial Protection Act claim because the Act does not confer a private right of action and the plaintiff did not state a claim on which relief could be granted).

The problems with Count Two of Bey's Third Amended Complaint cannot be cured with more careful pleading, as he seeks relief that is fundamentally unavailable to him, as explained above. The Eleventh Circuit has held that, "[i]f a plaintiff cannot state a claim under a more carefully drafted complaint, the district court may dismiss the case with prejudice without an opportunity to amend." *Woide v. Fed. Nat'l Mortg. Ass'n*, 705 F. App'x 832, 836 (11th Cir. 2017). In *Berkery*, it affirmed the lower court's dismissal with prejudice and without leave to amend because no

amount of repleading could create a private right of action where one did not exist. 518 F. App'x at 814. *See also Smith*, 837 F. App'x at 769–70 (affirming the district court's decision to dismiss without leave to amend "because [the plaintiff] could not have alleged different facts to state a claim under . . . statutes that do not provide private rights of action"). Accordingly, because Bey, who is proceeding *in forma pauperis*, attempts to state a claim under a federal statute that offers no private right of action, Count Two is due to be **DISMISSED WITH PREJUDICE.** 28 U.S.C. § 1915(e)(2)(B)(ii); *Smith*, 837 F. App'x at 769–70.

II.      Count One: No Subject Matter Jurisdiction

After Count Two is dismissed for all of the reasons discussed above, the only claim remaining before the court is the common law breach of contract claim in Count One, but the court finds it is due to be dismissed for lack of subject matter jurisdiction. It is axiomatic that "[f]ederal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). A federal court "must zealously [ensure] that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001). If, at any point in a case, a court determines it lacks subject matter jurisdiction, it must dismiss the

case. Fed. R. Civ. P. 12(h)(3); *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) ("Simply put, once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue.").

Federal courts generally have two types of original subject matter jurisdiction: federal-question jurisdiction and diversity jurisdiction. Federal question jurisdiction allows courts to hear cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Diversity jurisdiction allows courts to hear cases in which the amount in controversy exceeds $75,000 and the parties are citizens of different states. *Id.* § 1332(a)(1). Diversity jurisdiction "requires complete diversity" among the parties, meaning that no plaintiff is a citizen of the same state as any defendant. *Triggs v. John Crump Toyota*, 154 F.3d 1284, 1287 (11th Cir. 1998). The citizenship of a natural person—such as Bey—is determined by his or her domicile, not merely residence, with domicile "requir[ing] both residence in a state and an intention to remain there indefinitely . . ." *Travaglio v. Am. Express Co.*, 735 F.3d 1266, 1269 (11th Cir. 2013) (citation and quotation marks omitted). Although residence and domicile are closely related, they are nonetheless distinct requirements and an allegation of the former does not automatically satisfy the latter. *Molinos Valle Del Ciabo, C. por A. v. Lama*, 633 F.3d 1330, 1341–42 (11th Cir. 2011) ("Domicile is not synonymous with residence; one may temporarily reside in one location, yet retain domicile in a previous residence."). The citizenship of a

corporation such as American Express is derived from both the state of its incorporation and the state of its principal place of business, as determined at the time the lawsuit was filed. 28 U.S.C. § 1332(c)(1); *MacGinnitie v. Hobbs Grp., LLC*, 420 F.3d 1234, 1239 (11th Cir. 2005).

If a court has either type of original subject matter jurisdiction over any of a plaintiff's claims, it may also adjudicate claims that "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Such "supplemental jurisdiction" is intended to "promote judicial economy and procedural convenience." *Ameritox, Ltd. v. Millennium Labs., Inc.*, 803 F.3d 518, 530 (11th Cir. 2015). If, however, a district court dismisses all of the underlying claims over which it had original jurisdiction, it may decline to exercise its supplemental jurisdiction over the remaining claims. 28 U.S.C. § 1367(c)(3). When determining whether to decline the exercise of supplemental jurisdiction, a court should consider judicial economy, convenience, fairness to litigants, and comity. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988), *superseded by statute on other grounds as recognized in Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 41 (2025). Although technically a matter of discretion, the Eleventh Circuit has strongly "encouraged district courts to dismiss any remaining state claims when . . . the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004). This court

has likewise held that "[i]n accordance with the tenets of federalism and of comity, state courts should be the primary deciders of questions of state-law." *Skurstenis v. Jones*, 139 F. Supp. 2d 1291, 1293 (N.D. Ala. 2001).

In the Third Amended Complaint, Bey asserts two claims against American Express: common law breach of contract in Count One, (doc. 18, ¶¶ 11–17), and violation of the Consumer Financial Protection Act in Count Two, *id.*, ¶¶ 18–23. As the plaintiff, it is Bey's responsibility to allege sufficient facts for the court to find it has subject matter jurisdiction over these claims. *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994). Bey's only attempt to discharge this burden is his assertion that the court has federal question jurisdiction over Count Two under 28 U.S.C. § 1331 "as this action involves federal questions under the Consumer Financial Protection Act," (doc. 18, ¶ 1), but Count Two is due to be dismissed for the reasons discussed above. Thus, before the court can rule on Count One, the sole remaining claim, it must be sure it has subject matter jurisdiction to do so. *Smith*, 236 F.3d at 1299.

Across his four complaints, Bey has never alleged a specific jurisdictional basis for the common law breach of contract claim in Count One. (*See generally* docs. 1; 5; 17; 18). After careful review of each, the court does not find that Bey has alleged sufficient facts for the court to find it has *original* jurisdiction over Count One. The court does not have federal question jurisdiction over Count One because

breach of contract is a common law doctrine that does not "aris[e] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The court might, theoretically, have diversity jurisdiction pursuant to 28 U.S.C. § 1332 over Count One, but Bey has not alleged sufficient facts for the court to be satisfied on this point. As stated above, diversity jurisdiction requires (1) that the amount in controversy be more than $75,000, and (2) complete diversity among the parties. *Triggs*, 154 F.3d at 1287. The amount in controversy is likely satisfied, as Bey alleges that American Express caused him to incur "penalties, late fees, and interest inflating the balance [of his account] from $7,000 to over $210,000," (doc. 18, ¶ 10), but he has not alleged sufficient facts for the court to be satisfied on the citizenship of the parties. Bey alleges that he *resides* in Alabama, (doc. 1 at 1), but citizenship for diversity jurisdiction is determined by *domicile*, not mere residence, and Bey has not alleged any facts from which the court could find that he has "an intention to remain [in Alabama] indefinitely," *Travaglio*, 735 F.3d at 1269. Moreover, Bey alleges that American Express has its principal place of business in New York, (doc. 1 at 1), but he does not allege any facts from which the court could be satisfied as to its state of incorporation, *MacGinnitie*, 420 F.3d at 1239. Because Bey does not allege sufficient facts for the court to be satisfied as to the parties' citizenship, the court does not have diversity jurisdiction over Count One pursuant to 28 U.S.C. § 1332.

Nevertheless, the allegations in the Third Amended Complaint could allow the court to hear Count One in conjunction with Count Two pursuant to its supplemental jurisdiction if the two are "so related . . . that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Upon careful review of the record, and with the deference due to Bey as a *pro se* plaintiff, *Dean*, 951 F.2d at 1213, the court finds that, as alleged, Counts One and Two are so related that the court could exercise its supplemental jurisdiction over the breach of contract claim in Count One. However, just because the court *can* does not mean it *will*: in deference to "judicial economy, convenience, fairness, and comity," *Cohill*, 484 U.S. at 350, and the fact that "state courts should be the primary deciders of questions of state-law," *Skurstenis*, 139 F. Supp. 2d at 1293, the court declines to retain jurisdiction over Bey's common law breach of contract claim. Count One is therefore due to be dismissed without prejudice. *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (dismissal for lack of subject matter jurisdiction must be without prejudice).

Bey may protest that he could easily amend his complaint to establish the citizenship of the parties sufficient for the court to find it has diversity jurisdiction over Count One, but the court will not permit him to do so. Although *pro se* plaintiffs are entitled to more leeway from the court, *Dean*, 951 F.2d at 1213, and courts "should freely give leave [to amend a complaint] when justice so requires," Fed. R.

14

Civ. P. 15(a)(2), such an amendment would be futile here. The Eleventh Circuit has held that "[w]hile a *pro se* litigant generally must be given at least one opportunity to amend his complaint, a district judge need not allow an amendment where amendment would be futile." *Cornelius v. Bank of Am., NA*, 585 F. App'x 996, 1000 (11th Cir. 2014). "Leave to amend a complaint is futile when the complaint as amended would still be . . . immediately subject to summary judgment for the defendant." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007). *See also Hawkins v. Thompson*, No. 3:30-cv-64, 2022 WL 896809, at *2 (M.D. Ala. Feb. 16, 2022), *report and recommendation adopted*, No. 3:30-cv-64, 2022 WL 894099, at *1 (M.D. Ala. Mar. 25, 2022) ("[G]iving Plaintiff another opportunity to amend for the purpose of including the required jurisdictional allegations would be futile and a waste of judicial resources."). The court may consider the full record to decide how it *would* rule on such a motion to determine whether amendment is futile. *See Faison v. Ratliff*, No. 21-11098, 2022 WL 577584, at *3–*5 (11th Cir. Feb. 25, 2022) (per curiam) (affirming district court that considered summary judgment record to decide how it would rule if the complaint were amended).

The court will not allow Bey to amend his complaint to permit the court to exercise diversity jurisdiction over Count One: such an amendment would be futile because American Express would immediately be entitled to summary judgment. *Cockrell*, 510 F.3d at 1310. A court "shall grant summary judgment if the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is sufficiently genuine to preclude summary judgment "if 'a jury applying [the applicable] evidentiary standard could reasonably find for either the plaintiff or the defendant.'" *Brady v. Carnival Corp.*, 33 F.4th 1278, 1281 (11th Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). This court looks to Alabama law for the elements of a breach of contract claim, *see Williams v. Select Portfolio Servicing, Inc.*, No. 2:18-cv-1529, 2019 WL 2995513, at *3 (N.D. Ala. July 9, 2019), and, therefore, Bey must prove all of the following: (1) the existence of a valid contract, (2) his own performance of his obligations, (3) American Express's failure to perform its obligations, and (4) damages, *Lambert v. First Fed. Mortg.*, 47 F. Supp. 3d 1310, 1318 (N.D. Ala. 2014) (quoting *Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So.2d 665, 673 (Ala. 2001)). Failure to demonstrate any one of these means the claim fails as a matter of law, *see id.* at 1319, and the court finds that Bey's breach of contract claim would fail on summary judgment because the undisputed evidence shows that there was no contract.

The court finds that American Express has put forward undisputed evidence that Bey did not have a valid contract at the time of the alleged breach in April and May of 2024. Raquel Hernandez, an Assistant Custodian of Records for American Express, testified by affidavit that (1) Bey's American Express account was canceled

in December 2022, (doc. 29-1, ¶¶ 4, 9), (2) Bey had fully paid off the entire outstanding balance by May 2023, *id.*, ¶ 11, and (3) after his May 2023 payment, Bey's erstwhile account had no outstanding balance and, thus, no need for him to make a payment, *id.*, ¶ 16. After that final payment, Bey's account was closed and no additional charges, interest, or fees accrued thereafter. *Id.*, ¶¶ 13–14. American Express also submitted (1) the December 2022 letter cancelling Bey's account, (doc. 29-8), (2) proof of Bey's May 2023 payment that left his account with an outstanding balance of zero dollars, (docs. 29-1, ¶¶ 11–12; 29-7 at 11), (3) the April 2024 letter rejecting his application for a new account, (doc. 29-10), and (4) the July 2024 letter confirming both the December 2022 cancellation of the account and rejection of the application for its reinstatement, (doc. 29-12). In opposing American Express's Motion for Summary Judgment, Bey admits that his "American Express account was closed . . . in December 2022," (doc. 33 at 3), and provides no evidence to demonstrate that there was a valid contract in April or May of 2024. Indeed, Bey's opposition to American Express's motion makes clear that he is predominantly concerned with the rejection of the alleged payment as an isolated act without stopping to consider whether there was any reason that the payment should have been accepted. *See id.* In sum, the court finds that the undisputed evidence in the summary judgment record shows that Bey cannot succeed in demonstrating the existence of a valid contract between himself and American Express, a necessity for

17

a breach of contract claim. *Lambert*, 47 F. Supp. 3d at 1318. Amending the Third Amended Complaint would therefore be futile because, even if Bey properly alleged a jurisdictional basis for the court to hear Count One, American Express would immediately be entitled to summary judgment. *Cockrell*, 510 F.3d at 1310. The court will therefore dismiss Count One without prejudice for lack of subject matter jurisdiction but without leave to amend.

## CONCLUSION

For all of the reasons set forth above, the court **ORDERS** as follows:

1.    Plaintiff King Brandon Moore Bey's Third Amended Complaint, (doc. 18), is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction as to Count One and **DISMISSED WITH PREJUDICE** for failure to state a claim on which relief can be granted as to Count Two, costs taxed as paid.

2.    Plaintiff King Brandon Moore Bey and Defendant American Express National Bank's Motions for Summary Judgment, (docs. 25; 28), are **DENIED AS MOOT**.

3.    The court will enter a separate final judgment.

4.      The Clerk of Court is **DIRECTED** to mail a copy of this Memorandum

Opinion to Plaintiff at his address on file.

**DONE** and **ORDERED** on March 26, 2026

**HAROLD D. MOOTY III**
UNITED STATES DISTRICT JUDGE